UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GENNADII ALEKSANDROVICH KOSTAREV,

Petitioner,

v.

WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY,[1]

Respondent.

Case No.  1:26-cv-00046-JLT-HBK (HC)

FINDINGS AND RECOMMENDATIONS TO GRANT PETITION FOR WRIT OF HABEAS CORPUS IN PART, AND DENY MOTION FOR PRELIMINARY INJUNCTION AS MOOT[2]

(Docs. 1, 3)

FIVE-DAY OBJECTION PERIOD

Petitioner Gennadii Aleksandrovich Kostarev, an immigrant detainee in U.S. Immigration Customs and Enforcement ("ICE") custody at the Golden State Annex Detention Facility in McFarland, California, initiated this action by filing a pro se petition for writ of habeas corpus under 28 U.S.C. § 2241, docketed on January 5, 2026.  (Doc. 1, "Petition").

////

---

[1] The Court sua sponte directs the Clerk of Court to update the case caption to reflect Warden of the Golden State Annex Detention Facility as the proper Respondent. *See Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004); *Doe v. Garland*, 109 F.4th 1188, 1199 (9th Cir. 2004) (affirming "the application of the immediate custodian and district of confinement rules to core habeas petitions filed pursuant to 28 U.S.C. § 2241, including those filed by immigrant detainees.").

[2] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2025).

## I.    BACKGROUND

It is uncontested that Petitioner is a native and citizen of Russia who attempted to enter the United States without inspection at a port of entry on or around March 1, 2022, was immediately arrested and detained, and was processed for expedited removal per Immigration and Nationality Act ("INA") Section 235(b)(1).  (Doc. 22-2, 22-3).  Petitioner expressed fear of persecution for practicing his religion and received information about a credible fear interview.  (Doc. 22-4, 22-5).  On March 11, 2022, U.S. Citizenship and Immigration Services ("USCIS") issued an Order of Release on Recognizance.  (Doc. 22-7, 22-8).

On September 8, 2025, at a voluntary appointment with ICE, Petitioner was arrested and taken into custody based on his 2022 Notice and Order of Expedited Removal.  (Doc. 14-1 at 5; Doc. 22-14).  On the same date, he was issued a Notice to Appear charging him as subject to removal pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) (alien entry without inspection).  (Doc. 14-2).  Subsequently, On September 25, 2025, "additional charges" were filed against Petitioner, charging him instead as subject to removal as an "arriving alien" pursuant to 8 U.S.C. § 1182(a)(7)(i)(I) (alien not in possession of valid entry document).  (Doc. 14 at 2; Doc. 14-3).

On November 11, 2025, Petitioner filed an unopposed motion for voluntary departure.  (Doc. 14-4).  On December 3, 2025, the Department of Homeland Security ("DHS") and Petitioner filed a joint motion for voluntary departure.  (Doc. 14-5 (including Petitioner's acknowledgment that should he fail to comply with voluntary departure, he would "accept the alternate written order of removal as a final disposition.")).  On December 4, 2025, the Immigration Judge ("IJ") granted Petitioner voluntary departure, to occur on or before January 5, 2026.  (Doc. 14-6; Doc. 22-11).

On January 5, 2026, Petitioners filed a pro se petition for writ of habeas corpus under 28 U.S.C. § 2241.  (Doc. 1, "Petition").  To the extent discernable, the Petition raises the following claims for relief: (1) he was unlawfully arrested and re-detained "without a reason" by ICE when he came to "ask questions" about the status of his visa application, (2) his continued detention is endangering his health; (3) he is unable to practice his religion as a Jehovah's witness because he was detained by ICE; and (4) his prolonged detention for four months is unlawful as he has been

"granted voluntary departure." (Doc. 1 at 6-7). As relief, *inter alia*, Petitioner asked that he be released so he and his wife can voluntarily depart the United States. (*Id.*). On January 9, 2026, Petitioner filed a motion for temporary restraining order. (Doc. 3). On January 13, 2026, the assigned district judge denied Petitioner's motion for a temporary restraining order as untimely, converted to motion to one seeking preliminary injunction, and referred the matter to the undersigned magistrate judge. (Doc. 6). On January 16, 2026, the Court directed response to the Petition and the motion for preliminary injunction. (Doc. 7).

On January 27, 2026, Petitioner was issued a Warrant of Removal/Deportation, and a Warning to Alien Ordered Removed or Deported. (Doc. 22-9, Doc. 22-10).

On February 6, 2026, Respondent filed a response to the Petition arguing that because Petitioner did not voluntarily depart by January 5, 2026, per the Court's December 4, 2025 order granting voluntary departure, the voluntary departure order automatically converted to a final removal order; thus, Petitioner is subject to mandatory detention for 90 days pursuant to 8 U.S.C. § 1231(a)(2). (Doc. 14 at 3 (citing 8 C.F.R. § 1241.1(f))). On February 9, 2026, Petitioner filed a reply, again requesting release so he could obtain the necessary travel documents to voluntarily depart, and, as particularly relevant here, arguing that his re-detention without a hearing was a violation of his procedural due process rights. (Doc. 18 at 1-5).

On February 20, 2026, Petitioner filed a "Notice of Supplemental Authority and Developments" ("Notice"), with an attached "Motion to Reopen" the proceedings in Petitioner's underlying immigration removal proceedings filed on February 9, 2026, which was three days after Respondent filed their Answer to the Petition. (Doc. 20, "Motion"). In the Motion, the Department of Homeland Security ("DHS") argues the joint motion for voluntary departure granted on December 4, 2025 was filed "in error" because it was based, in part, on Petitioner's concession and admission to the charges set forth in the original Notice To Appear; however, DHS subsequently filed a Form I-261 on September 25, 2024 (*See* Doc. 14-3) correcting the original charge and alleging Petitioner is an arriving alien and inadmissible pursuant to INA § 212(a)(7)(A)(i)(I). (Doc. 20 at 5). DHS claims that due to his "corrected" status as an arriving alien, Petitioner is no longer eligible for voluntary departure; instead, Petitioner must file a

motion to withdraw his request for admission.  Thus, DHS requested that the IJ reopen proceedings so DHS can plead to the "correct" charges and "join a motion to withdraw his request for admission."  (*Id.*).

On February 23, 2026, after reviewing Petitioner's Notice, the Court entered an Order directing Respondent to submit additional briefing to clarify Petitioner's current detention status and the status of his removal proceedings before the immigration court, and expressing reluctance to rule on Petitioner's claim based on his detention status after being granted voluntary departure in light of the DHS's subsequent discovery that the joint motion for voluntary departure was perhaps filed in error.  (Doc. 21).

Also on February 23, 2026, the IJ granted DHS's motion to reopen the proceedings, rescinded the December 4, 2025 order granting the joint motion for voluntary departure, and found Petitioner was "not eligible for voluntary departure as an arriving alien." (Doc. 22-1).  On March 3, 2026, Respondent filed supplemental briefing arguing that despite no longer being subject to a final removal order, Petitioner is still subject to mandatory detention under 8 U.S.C. § 1225(b)(2) as an "applicant for admission," and is therefore ineligible for a bond hearing.  (Doc. 22 at 2-3).

Significant to the consideration of the Petition is Petitioner's status as a Russian citizen who was detained at the border but later released pursuant to an Order of Release on Recognizance.  The undersigned recommends the district court grant the Petition as to Petitioner's construed procedural due process claim for the reasons set forth below.[3]

## II.   APPLICABLE LAW AND ANALYSIS

The parties were notified in the Court's January 16, 2026 Order directing response, that the undersigned intended to issue findings and recommendations on the merits of the Petition with the understanding that the Court would also consider arguments made in support of the motion for preliminary injunction.  (Doc. 7).  Accordingly, the Court recommends advancing the

---

[3] In light of the Court's conclusion that Petitioner's re-detention was in violation of his procedural due process rights (claim one), and recommendation that Petitioner be granted immediate release, it is unnecessary for the Court to address Petitioner's additional claims for relief.

merits determination and consolidating it with the resolution of the preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a)(2), which provides that "[b]efore or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing."  Fed. R. Civ. P. 65(a)(2); *see also Dzhabrailov v. Decker*, 2020 WL 2731966, at \*4 (S.D.N.Y. May 26, 2020) (considering preliminary injunction and merits of petition simultaneously).

### A. Jurisdiction

A district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  As pertinent here, "district courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order."  *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211–12 (9th Cir. 2011)); *see also Jennings v. Rodriguez*, 538 U.S. 281, 294 (2018).

### B. Statutory and Legal Framework

As background, the Court will briefly outline the statutory framework of detention authority under the INA, and the recent shift in long-standing practice by Executive agencies in interpreting these statues.

### 1. Mandatory Detention under 8 U.S.C. § 1225(b)

Title 8 U.S.C. § 1225, titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing," states that an "alien present in the United States who has not been admitted or arrives in the United States … shall be deemed for purposes of this chapter an applicant for admission."  8 U.S.C. § 1225(a)(1).  "Applicants for admission must 'be inspected by immigration officers' to ensure that they may be admitted into the country consistent with U.S. immigration law."  *Jennings*, 583 U.S. at 287 (quoting § 1225(a)(3)).  Pursuant to § 1225(b)(1), if an immigration officer determines that an arriving alien is inadmissible, and the alien does not indicate an intention to apply for asylum or a fear of persecution, "the officer [must] order the alien removed from the United States without further hearing or review."  § 1225(b)(1)(A)(i); 8 U.S.C. § 1182(a)(7).  As relevant here, pursuant to § 1225(b)(2)(A), subject to

certain exceptions, "in the case of an alien who is an applicant for admission, if the examining officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained for a proceeding under 1229a of this title."  § 1225(b)(2)(A) (emphasis added).  "Applicants for admission" may be temporarily released on parole only "for urgent humanitarian reasons or significant public benefit."  *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A) and citing 8 C.F.R §§ 212.5(b), 235.3 (2017)).  As explained by the Supreme Court in *Jennings v. Rodriguez*,

> [r]ead most naturally, §§ 1225(b)(1) and (b)(2) … mandate detention of applicants for admission until certain proceedings have concluded. Section 1225(b)(1) aliens are detained for "further consideration of the application for asylum," and § 1225(b)(2) aliens are in turn detained for "[removal] proceeding[s]." Once those proceedings end, detention under § 1225(b) must end as well. Until that point, however, nothing in the statutory text imposes any limit on the length of detention. And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.

583 U.S. at 297.

### 2.  Discretionary Detention under 8 U.S.C. § 1226(a)[4]

Title 8 U.S.C. § 1226, titled "Apprehension and detention of aliens," instructs that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."  Pursuant to § 1226(a) the government has broad discretion whether to continue to detain the arrested alien or release the alien on (A) bond of at least $1,500 … or (B) conditional parole.  § 1226(a); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)) (noting an ICE officer makes the initial custody determination when a person is apprehended under § 1226(a) and may release the alien if he or she "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for

---

[4] Section 1226(c) "carves out a statutory category of aliens who may *not* be released under § 1226(a)," mandating detention for an alien apprehended under § 1226 "who falls into one of several enumerated categories involving criminal offenses." *Jennings*, 583 U.S. at 289 (emphasis in original).  In January 2025, the Laken Riley Act ("LRA") amended § 1226(c) to add a new category of alien ineligible for release under § 1226(a), including aliens deemed "inadmissible" for being "present in the United States without being admitted or paroled," who have been arrested for, charged with, or convicted of certain crimes.  LRA, Pub. L. No. 119-1 (Jan. 29, 2025); *see* 8 U.S.C. § 1182(a)(6)(A)(i), § 1226(c)(1)(E).

6

any future proceeding."). Section 1226 also provides that "a detainee may request a bond hearing before an IJ at any time before a removal order becomes final," and may request an additional bond hearing if he or she can demonstrate a material change in circumstances. *Id*. at 1197 (citing 8 C.F.R. § 236.1(d)(1), 1003.19(e)).

"Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)). To obtain release, the detainee must demonstrate by the preponderance of the evidence that he or she is "not a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *Matter of Guerra*, 24 I.& N. Dec. 37, 40 (B.I.A. 2006); *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007). After discretionary release under § 1226(a), the government retains authority "at any time" to revoke bond or conditional parole, rearrest the alien *under the original warrant*, and detain the alien. § 1226(b). However, "if an immigration judge has determined the noncitizen should be released, the DHS may not re-arrest that noncitizen absent a change in circumstance. Where the release decision was made by a DHS officer, not an immigration judge, the Government's practice has been to require a showing of changed circumstance before re-arrest." *M.R.R. v. Chestnut*, 2025 WL 3265446, at *3 (E.D. Cal. Nov. 24, 2025) (internal citations omitted); *Martinez Hernandez v. Andrews*, 2025 WL 2495756, at *10 (E.D. Cal. Aug. 28, 2025) (noting that while statute allows for rearrest at any time, "this does not mean that DHS may exercise its discretion in a manner that is inconsistent with constitutional requirements.").

### 3. Government's Change in Position

"Until this year, the DHS has applied § 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation." *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *3 (N.D. Cal. Sept. 12, 2025); *see also, e.g., Escobar Salgado v. Mattos*, 2025 WL 3205356, at *3 (D. Nev. Nov. 17, 2025) (citing *Inspection and Expedited Removal of Aliens*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Until the government adopted its new interpretation of § 1225(b)(2) this year, the longstanding (almost three decades) practice of the agencies charged with interpreting and enforcing the INA

without inspection and were apprehended while present in the U.S.  By contrast, those apprehended at or near a port of entry were designated as 'arriving aliens.'); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1244 (W.D. Wash. 2025r) ("The longstanding practice of the Executive branch agencies charged with interpreting and enforcing the INA considered noncitizens like [petitioner] who had entered without inspection, and were apprehended while residing in the United States, as subject to Section 1226(a).").  However, in July 2025, the Department of Homeland Security ("DHS"), in conjunction with the Department of Justice ("DOJ") adopted the legal position that § 1225, instead of § 1226, is the applicable immigration authority for an "applicant for admission" including an alien present in the United States "who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival," and all applicants for admission are subject to mandatory detention under § 1225(b). The Notice further provides "[t]hese aliens are also ineligible for a custody redetermination hearing ('bond hearing') before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS.  For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated."  *See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, American Immigration Lawyers Association (July 8, 2025), https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited January 7, 2026).  As noted above, in September 2025, the BIA issued a precedential decision adopting this interpretation of the government's detention authority under the INA and holding that IJ's do not have authority to hear bond requests or grant bond to aliens "who are present in the United States without admission," because they are applicants for admission and subject to mandatory detention under § 1225(b)(2)(A).  *See Matter of Yajure Hurtado*, 29 I&N Dec. 216 at *9.

### C. Due Process

The Fifth Amendment's Due Process Clause provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law."  Further, it is "well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Trump v. J.G.G.*, 604 U.S. 670 (2025) (citing *Reno v. Flores*, 507 U.S. 292, 305 (1993); *Zadvydas*

*v. Davis*, 533 U.S. 678, 693-94 (2001). However, the Supreme Court has simultaneously acknowledged that "the nature of protection [under the Due Process clause] may vary depending on [immigration] status and circumstance." *Zadvydas*, 522 U.S. at 693 ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law.").  As relevant here, "once an alien enters the country, the legal circumstances change, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary or permanent." *Id*.; *see also Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission ... and those who are within the United States after an entry, irrespective of its legality. In the latter instance, the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'").  The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

### D.  Claim One: Procedural Due Process

Relevant here, Petitioner claims his arrest and re-detention without a hearing is unlawful and violates his procedural due process rights.  (Doc. 1 at 6; Doc. 18 at 1).  First, the Court does not look favorably on Respondent's failure to apprise the Court of the eleventh-hour "correction" of Petitioner's immigration status to an "arriving alien" and how this "correction" impacted Petitioner's claim regarding his detention pending voluntary departure, and more significantly, whether Petitioner was subject to a final order of removal upon his failure to voluntarily depart. Second, Respondent does not substantively address whether Petitioner's repeated claims of violation of his due process rights under the Fifth Amendment (*See* Doc. 18-1, Doc. 20 at 1); rather, Respondent's revised argument in supplemental briefing submitted after determining Petitioner is no longer eligible for voluntary departure as a newly re-classified "arriving alien," is the now familiar boilerplate response that "Petitioner does not possess a right to freedom from immigration in any form other than the form provided by Congress," and, as "an applicant for admission," Petitioner is subject to the mandatory detention under § 1225(b)(2) and is thus

9

"ineligible" for a bond hearing.  (Doc. 22 at 2-3).

Given the relevance of this dispute to the due process analysis, as a threshold matter the Court joins with the overwhelming majority of courts across the country in rejecting Respondent's argument that noncitizens who were previously released on conditional parole and later re-detained are "applicants for admission" subject to mandatory detention under § 1225(b)(2)(A); rather, the detention of those noncitizens, like Petitioner, continues to be governed by § 1226(a) during removal proceedings.  *See, e.g., Montero-Alvarez v. Alberran*, 2025 WL 3754116, at *4 (E.D. Cal. Dec. 29, 2025) (collecting cases); *Sharan S. v. Chestnut*, 2025 WL 3167826, at *5 (E.D. Cal. Nov. 12, 2025) ("Respondents' argument that section 1225(b)(2)(A) applies to all noncitizens present in the United States without admission is unpersuasive. Respondents' proposed interpretation of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice."); *C.A.R.V. v. Wofford*, 2025 WL 3059549, at *8 (E.D. Cal. Nov. 3, 2025) ("The government's recent interpretation of the relationship between § 1225 and § 1226 is unfounded and detention is therefore not 'mandatory' in this case, where petitioner has been present in the United States for approximately four years and was released on his own recognizance well before Respondents adopted the new interpretation of the governing statutes."); *Barco Mercado v. Francis*, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) ("By a recent count, the central issue in this case – the administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed – has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States.  Thus, the overwhelming, lopsided majority have held that the law still means what it always has meant.") (collecting cases); *But see, e.g., Alonzo v. Noem*, 2025 WL 3208284, at *5 (E.D. Cal. Nov. 17, 2025) (denying motion for temporary restraining order because petitioner failed to establish he was likely to succeed on the merits of his statutory

10

claim, but also noting the finding "should not be understood an affirmative endorsement of the view that respondents' interpretation of § 1225(b)(2)(A) – which is in line with the expansive understanding of mandatory detention applicability – is correct."); *Ramos v. Lyons*, 2025 WL 3199872 (C.D. Cal. Nov. 12, 2025).

Procedural due process claims are analyzed in two steps. *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). First, the Court examines whether a protected liberty interest exists. *Garcia v. Andrews*, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025 (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)). Respondent does not contest that Petitioner was apprehended upon entering the country and subsequently released on his own recognizance. (*See* Doc. 22-8). As explained *supra*, an ICE officer makes an initial custody determination when a person is apprehended under § 1226(a) and has the discretion to release the alien if he or she "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)). Thus, "[r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom*, *Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018); *Espinoza v. Kaiser*, 2025 WL 2675785, at *6 (E.D. Cal. Sept. 18, 2025) (noting a person on conditional parole is generally released on their own recognizance subject to certain conditions such as reporting requirements).

Where, as here, "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody [he or] she has a protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032-33 (N.D. Cal. 2025) ("[e]ven when the government has discretion to detain an individual, its subsequent decision to release the individual creates 'an implicit promise' that [he or] she will be re-detained only if [he or] she violates the conditions of her release.") (collecting cases). Petitioner was issued an Order of Release on Recognizance pending a final removal decision, and

11

attests that he has fully complied with his terms of release and the laws of the United States. (Doc. 1 at 6; Doc. 18 at 1; Doc. 22-8).  He is a practicing Jehovah's witness who volunteers 50 hours a month, pays taxes, and owns two businesses in the community.  (Doc. 1 at 6; Doc. 18 at 1).  He has been married for four years to a United States citizen.  (Doc. 1 at 9).  Thus, the Court finds Petitioner's release and time spent out of custody gives rise to a protected liberty interest in continued release following conditional parole.[5]  *See Solano v. Robbins*, 2025 WL 3718831, at *6 (E.D. Cal. Dec. 23, 2025) ("Relying on *Morrissey*, courts in this district have consistently held that noncitizens who have been released from immigration custody pending civil removal proceedings have a protected interest in remaining out of immigration custody.") (collecting cases); *Pinchi*, 792 F. Supp. 3d at 1033 ("These extensive relations of support and interdependence underscore the high stakes of [their] liberty.").

Finding that due process applies, the question before the Court is, what process is due? "The constitution typically requires some kind of hearing before the State deprives a person of liberty or property.  This is particularly true when the interest is in liberty, the loss of which cannot fully be compensated after the fact."  *Salcedo Aceros*, 2025 WL 2637503, at *5 (internal quotations and citations omitted).  To determine whether constitutionally sufficient procedures to protect a liberty interest of a previously released and then re-detained noncitizen, courts apply the three factor balancing test outlined in *Mathews v. Eldridge*:[6] (1) the private interest that will be affected by the official action, (2) the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional procedural safeguards, and (3) the

---

[5] As noted recently by this Court, "[e]ven assuming Respondents are correct that § 1225(b) is the applicable detention authority for all 'applicants for admission,' Respondents fail to contend with the liberty interest created by the fact that [Petitioners in this case were released] *prior to the manifestation of this interpretation*." *Garcia v. Chestnut*, 2025 WL 3771348, at *9 (E.D. Cal. Dec. 31, 2025) (emphasis in original).

[6] The Ninth Circuit has noted that the Supreme Court "when confronted with constitutional challenges to immigration detention has not resolved them through express application of *Mathews*." *Rodriguez Diaz*, 53 F.4th at 1206-07.  However, in light of the consistent employment of *Mathews* by district courts in the Ninth Circuit in determining whether due process applies in the context of re-detention of previously paroled noncitizens, the Court proceeds to apply those factors while still reserving judgment on whether *Mathews* is an "all embracing test" when encountering due process challenges by immigrant detainees. *See A.E. v. Andrews*, 2025 WL 1424382, at *4 (citing *Dusenbury v. United States*, 534 U.S. 161, 168 (2002) ("we have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims.").

12

government's interest, including the function involved, as well as the fiscal and administrative burdens that the procedural requirement would entail.  424 U.S. 319, 335 (1976).

First, the Court considers "the private interest that will be affected by the official action." *Id*.  Petitioner has a substantial private interest in remaining free from detention.  *See Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty [the Due Process] Clause protects."); *Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (recognizing it is "beyond dispute" that the "private interest at issue here is 'fundamental': freedom from imprisonment is the 'core of the liberty protected by the Due Process Clause.'").  Clearly, Petitioner has an interest in being employed and maintaining relationships in the community.  *See Pinchi*, 792 F. Supp. 3d at 1033. Thus, Petitioner's private interest is heavily affected, and this factor weighs in favor of Petitioner.

Second, the Court considers "the risk of an erroneous deprivation of such an interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards."  *Mathews*, 424 U.S. at 335.  Here, Petitioner received no form of pre-deprivation custody redetermination hearing.  Thus, the risk of erroneous deprivation is considerable.  *See A.E. v. Andrews*, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation of [a petitioner's] interest is high where [h]e has not received any bond or custody redetermination hearing.") (internal quotations omitted).  Civil immigration detention is assumed to be "nonpunitive in purpose and effect," and is therefore justified when a noncitizen presents a risk of flight or danger to the community.  *See Zadvydas*, 533 U.S. at 690.  Based on the documents submitted by Respondent, Petitioner was released on his own recognizance subject to certain conditions.  (Doc. No. 22-8).  "In general, release reflects a determination by the government that the noncitizen is not a danger to the community of a flight risk."  *Saravia*, 280 F. Supp. 3d at 1176.   Notably, Respondent makes no argument that Petitioner presents a flight risk or danger, and Petitioner claims he has never violated the terms or conditions of his release from custody.  (Doc. 1 at 6 (also alleging he was re-detained when he "came to ask ICE some questions about [his] case")).  Given the absence of determination by a neutral arbitrator as to whether Petitioner is currently a flight risk or danger to the community, both the risk of erroneous

deprivation of Petitioner's interest, and the probable value of additional safeguards, is high. *See A.E.*, 2025 WL 1424382, at *5.

Third, the Court considers the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Mathews*, 424 U.S. at 334. Unquestionably, the government has a significant national interest in enforcing its immigration laws. Indeed, it is a sovereign's fundamental right to control its borders, to protect national security, and ensure integrity in its immigration system. However, Respondent fails to explain how Petitioner threatens these interests or how the government's interest is weakened by affording him a hearing before a neutral decisionmaker. Nor does Respondent offer evidence of how affording a hearing results in either a fiscal or administrative burden, which has been found to be "minimal" by other courts. *See J.A.E.M. v. Wofford*, 2025 WL 3013377, at *7 (E.D. Cal. Oct. 27, 2025) (citing *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("In immigration court, custody hearings are routine and impose a 'minimal' cost."). Because Respondent did not provide Petitioner with notice or reasons prior to his re-detention, and has seemingly offered no reasoning in any proceedings, including this one before this Court, as to why that decision was made, the Court finds Respondent has failed to demonstrate a significant interest in Petitioner's detention. *See Noori v. LaRose*, 2025 WL 2800149, at *11 (S.D. Cal. Oct. 1, 2025). As recently explained by a court in this district,

> the government's asserted interest is hinged on mere speculation about Petitioner's risk of flight or dangerousness. [Petitioners] seek a bond hearing, not unqualified release. Providing a bond hearing would not undercut the government's asserted interest in effecting removal. Indeed, the purpose of a bond hearing is to inquire whether the alien represents a flight risk or danger to the community. Given 'the minimal cost of conducting a bond hearing, and the ability of the IJ to adjudicate the ultimate legal issue as to whether Petitioner's continued detention is justified,' courts have concluded that 'the government's interest is not as weighty as Petitioner's.

*A.E. V. Andrews*, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025). This Court joins in this analysis and finds Petitioner's interest outweighs the government's interest in this instance.

14

Based on the foregoing, the Court finds the *Mathews* factors weigh in favor of the Petitioner, and his re-detention without hearing was a violation of his procedural due process rights.

### E.  Conclusion and Remedy

As a final matter, the Court now considers whether a pre-deprivation or post-deprivation bond hearing is appropriate for Petitioner in this case.  As previously reasoned by the assigned district judge,

> The Supreme Court has held that "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *See Zinermon v. Burch*, 494 U.S. 113, 127, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (emphasis in original). However, the Court also recognized that there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate. *Id.* at 128, 110 S.Ct. 975 (noting there may be "special case[s]" where a pre-deprivation hearing is impracticable); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 791 F.Supp.3d 1021, 2025 WL 1983677, at *9 (N.D. Cal. July 17, 2025) ("absent evidence of urgent concerns, a *pre*-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ"). The rapidly developing caselaw on this subject gives limited guidance as to where this line should be drawn. Some courts that have addressed detention-related habeas petitions brought by persons released with enhanced supervision conditions have required pre-deprivation process, but in somewhat different circumstances. In *E.A.T.-B. v. Wamsley*, No. C25-1192-KKE, 795 F.Supp.3d 1316, 2025 WL 2402130, at *4 (W.D. Wash. Aug. 19, 2025), the district court ordered the release of a petitioner arrested by ICE immediately after appearing in immigration court. That court agreed with the petitioner that ICE's post hoc explanation that violations warranted her detention was pretextual, given that ICE first became aware of petitioner's alleged violations a few hours before her immigration hearing, DHS did not raise those violations at the hearing or argue the petitioner should be detained for any reason, and the petitioner was then provided multiple, inconsistent justifications for her arrest. *Id*. In *Arzate v. Andrews*, No. 1:25-CV-00942-KES-SKO (HC), 2025 WL 2230521, at *7 (E.D. Cal. Aug. 4, 2025), converted to preliminary injunction sub nom, 2025 WL 2411010, at *1 (E.D. Cal. Aug. 20, 2025), the court ordered immediate release of in immigration detainee who had been in compliance with his conditions of release, even though he had incurred a misdemeanor arrest while on parole, in part because no charges were ever filed.
>
> *12 In contrast, this Court ordered a bond hearing in *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767 (E.D. Cal. Aug. 28, 2025), where the petitioner's records indicated numerous violations. Though Martinez Hernandez offered explanations for the violations and there was a dispute of fact as to whether the violations occurred, ICE's reliance upon those violations

was "not obviously pretexual." *Id*. at * 12 ("If Respondent's view of the facts is correct, it is at least arguable that providing Petitioner with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated her flight."). As this Court noted in *Martinez Hernandez*:

> In similar circumstances, courts have refused to release the petitioners but have ordered timely bond hearings. Carballo v. Andrews, No. 1:25-CV-00978-KES-EPG (HC), 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025), citing Perera v. Jennings, et. al, No. 21-CV-04136-BLF, 2021 WL 2400981, at *5 (N.D. Cal. June 11, 2021); Pham v. Becerra, No. 23-CV-01288-CRB, 2023 WL 2744397, at *6 (N.D. Cal. Mar. 31, 2023). "[A]llowing a neutral arbiter to review the facts would significantly reduce the risk of erroneous deprivation." Guillermo M. R. v. Kaiser, No. 25-CV-05436-RFL, 791 F.Supp.3d 1021, 2025 WL 1983677, at *8 (N.D. Cal. July 17, 2025). Thus, the Court concludes that prompt, post-deprivation process is required here.

*M.R.R.*, 2025 WL 3265446, at *11-12.

Here, Petitioner claims he has never violated the terms or conditions of his release from custody on his own recognizance, and he has no criminal history. Respondent offers no argument or evidence as to any purported violations of Petitioner's conditions of release, nor do they make any argument that Petitioner is a flight risk or danger to the community. (*See* Doc. 22). The Court's review of the verified Petition offers no indicia that Petitioner's detainment was based on any purported violations of his release conditions. Consequently, the Court recommends that a pre-deprivation hearing is appropriate in this case.

Accordingly, it is hereby **RECOMMENDED:**

1. The Petition for Writ of Habeas Corpus (Doc. 1) be **GRANTED**.

2. Petitioner's Motion for Preliminary Injunction (Doc. 3) be **DENIED AS MOOT**.

3. Respondent be directed to IMMEDIATELY release Petitioner from DHS custody on the conditions of his prior release from custody

4. Once released, Respondent be PERMANENTLY ENJOINED AND RESTRAINED from rearresting or re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice of at least seven days before a pre-deprivation hearing at which the government will bear the burden of demonstrating by clear and convincing evidence that they are likely to flee or pose a

16

danger to society if not arrested.

5. If legally sufficient circumstances justify arrest without notice in advance, a post-deprivation hearing consistent with the requirements set forth here SHALL be provided within seven days of the arrest. Alternatively, if Petitioner becomes subject to a final order of removal and Petitioner receives notice of such order, Respondent may detain Petitioner for the sole and limited purpose of executing removal. In this event, Respondent SHALL provide a bond hearing in the timeframe required by law.

6. This case be CLOSED.

### NOTICE OF EXPEDITED OBJECTIONS

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Given the recommendation to grant the petition in part, a party may file written objections with the Court within five (5) days of service of these Findings and Recommendations.** *Id*.; Local Rule 304(b) (permitting court to set a different time). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed **fifteen (15) pages**. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

Dated:    March 24, 2026

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

17